1  Adamina McKenzie
   Elliott McKenzie
2  118 Minner Avenue, #5504
   Telephone: N/A
3  Email: adaminamckenzie@yahoo.com
   Email: elliottmckenzie@ymail.com
4

5  IN PRO PER

6

**FILED**

**NOV 17 2023**

CLERK U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

7              **UNITED STATES DISTRICT COURT**

8              **EASTERN DISTRICT OF CALIFORNIA**

9

10 **ADAMINA MCKENZIE; ELLIOTT MCKENZIE**

11                        **Plaintiffs,**

12    v.

13 **SOCIAL SECURITY ADMINISTRATION; a Public Entity; and DOES 1-10 inclusive**

14

15                        **Defendants**

Case No.: 1:23-cv-01620-CDB

**PLAINTIFF'S COMPLAINT FOR:**

1. **TITLE II of the AMERICANS WITH DISABILITIES ACT (the "ADA"), 42 U.S.C. § 12132**
2. **TITLE III of the AMERICANS WITH DISABILITIES ACT (the "ADA"), 42 U.S.C. § 12181**
3. **RETALIATION CLAIM UNDER TITLE IV**

**[DEMAND FOR JURY TRIAL]**

16

17

18

19

20

21

22

23

24

25

26

27    Plaintiffs ADAMINA MCKENZIE (herein after "PLAINTIFF"; "MRS.

28 MCKENZIE) and ELLIOTT MCKENZIZE (herein after "PLAINTIFF", "MR.

- 1 -

**VERIFIED COMPLAINT FOR DAMAGES**

MCKENZIE) hereby files this complaint against **SOCIAL SECURITY ADMINISTRATION; a Public Entity; and DOES 1-10 inclusive** collectively for damages and alleges as follows:

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over these federal claims by operation of 28 U.S.C. §§ 1331 and 134.

2. This Court has authority to issue the demanded relief to recover damages under 28 U.S.C. § 1343.

3. Plaintiff ADAMINA MCKENZIE is an individual residing in the County of Kern County, State of California.

4. Plaintiff ELLIOTT MCKENZIE is an individual residing in the County of Kern County, State of California.

5. Defendant SOCIAL SECURITY ADMINISTRATION is a Public Entity and licensed to do business in the State of California and was/is doing business in California including Kern County.

6. On June 28, 2022, Plaintiff Adamina McKenzie exhausted her administrative remedy by filing a claim form with the Social Security Administration Office of General Counsel. Mrs. McKenzie received a denial of said claim on October 14, 2022 (**A true and correct copy along with USPS delivery confirmation is attached herein as "EXHIBIT A"**). On April 14, 2023, Plaintiff Adamina McKenzie filed her initial complaint for damages and on August 4, 2023 said complaint was dismissed without prejudice for lack of jurisdiction.

7. On February 6, 2023, Plaintiff Elliott McKenzie exhausted his administrative remedy by filing a claim form with the Social Security Administration Office of General Counsel. Mr. McKenzie received a denial of said claim on May 9, 2023 by Social Security Administration Office of General Counsel. Mr. McKenzie received said rejection on May 17, 2023 (**A true and correct copy**

**VERIFIED COMPLAINT FOR DAMAGES**

1   of the rejection along with USPS delivery confirmation is attached herein

2   as "**EXHIBIT B**").

8.  Venue is proper in the U.S. District Court of California Eastern Division of

    Kern County, as this Court has personal jurisdiction pursuant to 28 U.S. Code

    § 1391; because both Plaintiffs reside in Kern County.

## PARTIES

9.  Plaintiff ADAMINA MCKENZIE is an individual over the age of eighteen

    (18) and/or at all times mentioned in this Complaint is a resident of the state of

    California who resides in Kern County.

10. Plaintiff ELLIOTT MCKENZIE is an individual over the age of eighteen (18)

    and/or at all times mentioned in this Complaint is a resident of the state of

    California who resides in Kern County.

11. Defendant SOCIAL SECURITY ADMINISTRATION claims to administer

    retirement, disability, survivor, family benefits, and enroll individuals in

    Medicare. Said government agency also provides Social Security Numbers,

    which are unique identifiers needed to work, handle financial transactions, and

    determine eligibility for certain government services. Plaintiff is ignorant of the

    true name and capacity of defendants sued herein as Does 1-10, inclusive, and

    therefore sues these defendants by such fictitious names. Plaintiff will amend

    this complaint to allege defendant's true name and capacity when ascertained.

    Plaintiff is informed and believes and thereon alleges that the fictitiously

    named defendants are responsible in some manner for the occurrences herein

    alleged, and that Plaintiff's injuries as herein alleged were proximately caused

    by the aforementioned defendants.

### Sovereign Immunity Waiver

12. Sovereign immunity refers to a government's immunity from being sued by its

    citizens in its own courts without its consent. It can trace its roots as far back

- 3 -

**VERIFIED COMPLAINT FOR DAMAGES**

into the English common law as the 13th Century. Underlying sovereign immunity is the concept that "the king can do no wrong," because his word was the law. The American legal system is predicated on an entire body of laws not found in any books – English Common Law. Sovereign immunity found its way into American law books via the common law. Long before the Federal Tort Claims Acts was passed in 1946, the only way to sue the federal or state government was to get its consent, something rarely given. For many years after the ratification of the U.S. Constitution there were no exceptions to the immunity of the federal government. The U.S. Constitution declared that "No Money shall be drawn from the Treasury, but in Consequence of Appropriations made by Law." U.S. Const. Art. I, § 9. The only way to sue the federal government was by private bill. Congress could then pass that special bill and the action could proceed in court. Congress attempted to pass on this claims processing work to the courts, but the U.S. Supreme Court declared that this violated the separation of powers. Hayburns Case, 2 U.S. 409 (1792). As the federal government grew uncontrollably, the sheer number of claims made this process unworkable. The process was changed in 1855, when the Court of Claims was established.

13. For many years, the Court of Claims had the power to issue only advisory opinions and would only investigate claims against the federal government and recommend action. This made the Court of Claims an Article I court with the protection afforded the judges of an Article III court. In 1861, President Abraham Lincoln proposed giving the court the power to render final judgments and in 1863 Congress gave the court the ability to render final judgments and gave the U.S. Supreme Court jurisdiction to review Court of Claims judgments. In 1887, the Tucker Act was passed. It allowed citizens to sue the federal government for claims based on the U.S. Constitution and gave federal circuit courts concurrent jurisdiction with the Court of Claims for

VERIFIED COMPLAINT FOR DAMAGES

amounts up to $10,000. Also, in 1887, the Little Tucker Act was passed, giving federal district courts original jurisdiction, concurrent with the Court of Claims over any civil action against the U.S. 28 U.S.C. § 1346(a)(2).

14. In 1911, Congress transferred this jurisdiction to the federal district courts. In 1992, the Court of Claims was renamed the Court of Federal Claims and consisted of sixteen judges appointed for terms of fifteen years. Appeals from the Court of Federal Claims are heard by the U.S. Court of Appeals for the Federal Circuit. It hears only (1) Fifth Amendment takings claims, (2) claims for tax refunds, and (3) suits against the government based on contract disputes. 28 U.S.C. § 1491. It does not have jurisdiction to hear tort claims against the U.S. because those claims must be brought under the Federal Tort Claims Act.

15. The Federal Tort Claims Act (FTCA) is a limited waiver of the sovereign immunity of the U.S. It was passed in 1946 in order to make the federal government liable for certain torts and actions of its employees in the same way a private individual might be liable, although with many exceptions. Title IV, 60 Stat. 812, "28 U.S.C. Pt. VI Ch. 171", 28 U.S.C. §§ 1346(b), 2671-2680. It allows recovery "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." As mentioned above, the federal district courts have exclusive jurisdiction over FTCA actions.

16. Government Code - GOV § 815.2(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from

**VERIFIED COMPLAINT FOR DAMAGES**

this section, have given rise to a cause of action against that employee or his personal representative.

17. A number of statutory provisions granting consent to suit against public agencies do so in such broad and comprehensive terms as to suggest a legislative intent not only to consent to suit, but also to waive immunity from liability. Typical language of this sort was involved in the Muskopf case, where Mr. Justice Traynor quoted the applicable provisions of the Local Hospital District Act, 35 authorizing hospital districts to "sue and be sued in all courts and places and in all actions and proceedings whatever." Consistent with holdings in previous cases, however, this unequivocal declaration was held to be "similar" to a simple "sue and be sued" provision and hence to merely constitute "a waiver [of immunity] from suit and not a waiver of substantive immunity. Further, Government Code Section 23004, states that: A county may (a) Sue and be sued. Section 945.2, states: A public entity may sue and be sued. Thus, the Sovereign Immunity Waiver grants this court jurisdiction as the Social Security Administration is a governmental public entity that may sue and be sued.

## **INTRODUCTION**

1. Plaintiff Mrs. McKenzie applied for Social Security benefits because of her disability/medical condition and was presumed scheduled for an Administrative Hearing on May 25, 2022 at 9:15 am, with the person known as "Troy Silva" (Hereinafter "Mr. Silva"). The reason why Plaintiff indicates "presumed" is because "Silva" failed to send Plaintiff an official notice of said hearing.

2. Likewise, on October 5, 2022 Mrs. McKenzie was scheduled for an Administrative Hearing and demanded an "ADA" accommodation to appear in person without a mask or face covering as to her medical exemption in

**VERIFIED COMPLAINT FOR DAMAGES**

accordance with "CDC Guidelines" and the alleged "Executive Order" for herself and Mr. McKenzie. The demand for an "ADA" accommodation was demanded several months prior to Mrs. McKenzie's hearing. To Mr. and Mrs. McKenzie's surprise, they were both denied their lawful right to enter the Social Security Hearing Suite once again by the Security Officer known as "F. Garcia" (Herein after "Mr. Garcia"). Mr. McKenzie informed "Mr. Garcia" that a demand for an accommodation to Social Security Administration Civil Rights Unit was received according to USPS certified mail several months prior to Mrs. McKenzie's hearing. "Mr. Garcia" emphasized that the Chief Administrative Law Judge known as "Mr. Silva" informed him not to allow Plaintiffs to enter without a mask.

3. Furthermore, Plaintiffs were denied their lawful right to appear at Mrs. McKenzie's benefits determination hearing in person for not having the ability to wear a mask; because of their disability/medical conditions. Thus, being discriminated against and denied equal access and services due to their inability to comply with the purported "Executive Order" which served as the basis for the Social Security Administration's Mask Requirement.

## PLAINTIFF'S PRIOR MEDICAL CONDITION

4. Plaintiff's disabilities arose out of the same occurrence and according to their Primary Care Physician they both have Severe Intractable Post Traumatic Stress Syndrome, which they were diagnosed with in 2017. Plaintiff's disability prevented them from wearing a mask because it obstructs their breathing. Moreover, the Social Security Administration Psychologist during Mrs. McKenzie's evaluation in 2018 acknowledged that her condition was "Beyond PTSD". As a direct result of the violent acts that Mrs. McKenzie experienced at work. Plaintiffs both suffer from severe anxiety and severe emotional distress.

**VERIFIED COMPLAINT FOR DAMAGES**

1    5.  Plaintiff's Primary Care Physician exhausted all treatment options available

2    for their medical condition after all therapy treatments failed and was advised

3    that their final treatment options were to maintain proper breathing exercises

4    for their health and wellness to help prevent headaches, anxiety attacks, and

5    emotional distress – hence the reasons why wearing a mask for Plaintiffs were

6    not an option.

## FACTUAL ALLEGATIONS

8    **6.** On or around February 9, 2022, Mrs. McKenzie received an unofficial

9    correspondence presumably from the person known as "Troy Silva" that was

10    absent of a signature. Said correspondence included pertinent information to

11    Mrs. McKenzie in order for her to prepare for her hearing. The alleged

12    correspondence included: the date, time, location of her hearing along with her

13    rights and responsibilities.

14    **7.** On or around February 22, 2022, Mrs. McKenzie sent a certified letter to the

15    person known as "Troy Silva" to advise him that she received a

16    correspondence dated February 9, 2022 that was missing a signature. Mrs.

17    McKenzie informed "Mr. Silva" that she was notifying him that the law does

18    not allow her to accept and comply with unofficial correspondences and she

19    will not accept said notice as a valid correspondence. Mrs. McKenzie

20    demanded an official correspondence to be sent to her regarding her hearing

21    scheduled for May 25, 2022 along with her rights and responsibilities.

22    **8.** On or around February 25, 2022, according to USPS tracking the certified

23    correspondence that was sent to "Mr. Silva" from Mrs. McKenzie was received

24    on February 25, 2022.

25    **9.** On or around March 28, 2022, Mrs. McKenzie was forced to lodge a complaint

26    for unfair treatment against "Mr. Silva" with the Social Security Office of

27    Hearings Operations, Division of Quality Service. Mrs. McKenzie's complaint

28    was based upon "Mr. Silva's" refusal to send her an official correspondence

**VERIFIED COMPLAINT FOR DAMAGES**

with a signature. Plaintiff's complaint also emphasized her demand for "Mr. Silva" to send her an official correspondence with a valid signature to qualify the validity of said correspondence. Additionally, Plaintiff expressed her concern that she allowed 30 days to elapse and had yet to hear back from "Mr. Silva". Plaintiff's concern also surrounded the fact that she had been waiting over 3 years for her hearing and didn't want to be prejudiced from attending based upon an invalid notice.

10. On or around May 10, 2022, Mrs. McKenzie received a correspondence from the person known as "David Graham" (Herein after "Mr. Graham") (Social Security Branch Chief, Division of Quality Service Office of Executive Operations and Human Resources) acknowledging receipt of her letter dated March 28, 2022. Mr. Graham indicated that Social Security Administrative hold their "ALJ" (Administrative law Judges) to the highest accountability standards and expect them to act in a professional unbiased manner at all times. Plaintiff's complaint was forwarded for further review by Mr. Graham, and to date, Mrs. McKenzie has yet receive a follow up response.

11. On or around May 15, 2022, the person known as "Cindy Emershy" (Hearing Director) sent Mrs. McKenzie a correspondence alleging that the letter she received from "Mr. Silva" dated February 9, 2022 was in fact an official correspondence, which it was not.

12. On May 25, 2022, at approximately 9:10 am, Plaintiff's arrived at Mrs. McKenzie's Administrative Hearing. Upon arrival the Security Officer working on behalf of Paragon Systems known as "F. Garcia" (Herein after "Mr. Garcia") Badge#0664 greeted them at the door. "Mr. Garcia" asked Plaintiff's if they were there for a hearing and if he may see their identification. Plaintiff's showed their Driver's License to "Mr. Garcia", thereafter they were asked if they had a mask. Plaintiffs informed "Mr. Garcia" that they did not have a mask and respectfully declined to his offerings for wearing one. "Mr.

- 9 -

**VERIFIED COMPLAINT FOR DAMAGES**

Garcia" informed Plaintiffs that in order to enter the Social Security Hearing Suite they are required to wear a mask as per the alleged "Executive order". Plaintiffs informed "Mr. Garcia" that they were unable to wear a mask; because of their disability/medical conditions preventing them from doing so. Plaintiffs further inquired if whether or not Social Security honors medical exemptions. "Mr. Garcia" informed Plaintiffs husband that medical exemptions are not honored and regardless of his and his wife's medical condition, a mask is required in order to enter the Social Security Hearing Suite.

13. To their surprise as they attempted to enter the Social Security Hearing Suite "Mr. Garcia" put his arm up and blocked them from entering. "Mr. Garcia" informed Plaintiffs of an alleged "Executive Order" that requires individuals who enter the Social Security Hearing Suite to wear a mask. Plaintiffs objected to wearing a mask because of their disability/medical conditions and asked "Mr. Garcia" if he could qualify his claim and provide evidence of the alleged "Executive Order". "Mr. Garcia" indicated that he was not in possession of the "Executive Order" and only has a sign stating "Masks Required per Executive Order". Mr. McKenzie asked "Mr. Garcia" if he could qualify his claim regarding the law requiring them to wear a mask. "Mr. Garcia" informed him that he was not able to validate his claim. In fact "Mr. Garcia" went on to say to Mr. McKenzie that he agrees with him regarding a face mask not being required, but that he has to do his job. Mr. McKenzie informed "Mr. Garcia" that he may be liable not only for disability discrimination, but also because he is interfering with his wife's prospective economic advantage, and that his wife has been waiting over 3 years to receive her benefits. "Mr. Garcia" indicated that he understands, but he is just doing his job by allegedly following the person known as "Mr. Silva's" directive.

14. Plaintiffs were shocked and distraught that they were being refused their lawful right to attend the hearing in person for not having the ability to wear a mask,

- 10 -

due to their disability/medical conditions. Plaintiffs asked if they could speak with "Cindy Emershy" (Social Security Hearing Director). "Mr. Garcia" informed Plaintiffs that she was not available to speak. Plaintiffs inquired about the Social Security Administration's policies regarding them being required to wear a mask. "Mr. Garcia" indicated he would have someone come out to speak with them.

15. The person known as "Mark Yasutomi" (Herein after "Mr. Yasutomi") (Social Security Supervising Attorney) approached the door and informed Plaintiffs that he is the Supervising Attorney and further indicated that he was also denying them entry into the Social Security Hearing Suite without wearing a mask. "Mr. Yasutomi's" basis for his denial was because of the alleged "Executive Order" along with the Social Security Administration policies that are in accordance with said "Order". Mr. McKenzie asked "Mr. Yasutomi" if he was able to qualify his claim regarding the alleged "Executive Order" by providing him with the "Executive Order" in writing. "Mr. Yasutomi" informed Plaintiffs that all the Social Security Administration has is the notice. Plaintiffs then asked "Mr. Yasutomi" and "Mr. Garcia" if they were aware that they were violating their rights. "Mr. Yasutomi" and "Mr. Garcia" agreed with Plaintiffs position that they were in fact violating their rights, yet continued to refuse them access to enter the Social Security Administration Hearing Suite. "Mr. Yasutomi" stressed to Plaintiffs that he is following the directives of "Mr. Silva" and that there is nothing they could do, but file a complaint. Mr. McKenzie emphasized to "Mr. Yasutomi" and "Mr. Garcia" that they were interfering with his wife's prospective economic advantage, by denying her access to an in person hearing along with a reasonable accommodation.

16. Additionally, Plaintiffs husband asked "Mr. Garcia" and "Mr. Yasutomi" if they were aware of the alleged "Executive Order" being a "guideline" and does not require individuals interacting with federal employees to wear a mask.

**VERIFIED COMPLAINT FOR DAMAGES**

1   They both responded that they were aware, but Plaintiffs continued to be

2   denied entry without a mask. Mr. and Mrs. McKenzie were shocked that their

3   rights to an in person hearing were being wrongfully and unlawfully denied. It

4   was evident that "Mr. Garcia" and "Mr. Yasutomi" were acting fraudulently

5   with malice and oppression towards Plaintiffs.

6   17. The alleged "Executive Order" for protecting the federal workforce states the

7   following:

8   <u>**Executive Order on Protecting the Federal Workforce and Requiring Mask-Wearing**</u>

9   **Section 1. Policy.** It is the policy of my Administration to halt the spread of coronavirus disease 2019 (COVID-19) by
10  relying on the best available data and science-based public health measures. Such measures include wearing masks
    when around others, physical distancing, and other related precautions **recommended by the Centers for Disease**
11  **Control and Prevention (CDC)**. Put simply, masks and other public health measures reduce the spread of the disease,
    particularly when communities make widespread use of such measures, and thus save lives.

12  Accordingly, to protect the Federal workforce and individuals interacting with the Federal workforce, and to ensure the
    continuity of Government services and activities, on-duty or on-site Federal employees, on-site Federal contractors, and
13  other individuals in Federal buildings and on Federal lands **should all wear masks**, maintain physical distance, and
    adhere to other public health measures, as provided in **CDC guidelines**.

14  **Sec. 2. Immediate Action Regarding Federal Employees, Contractors, Buildings, and Lands.** (a) The heads of
15  executive departments and agencies (agencies) shall immediately take action, as appropriate and consistent with
    applicable law, to require compliance with CDC guidelines with respect to wearing masks, maintaining physical
16  distance, and other public health measures by: on-duty or on-site Federal employees; on-site Federal contractors; and
    all persons in Federal buildings or on Federal lands.

17  18. The alleged "Executive Order" is clear when it states that it is recommended

18  by "CDC" to wear a mask. Further the "Executive Order" continues on to state

19  that for individuals interacting with the federal workforce – "*should* all wear a

20  mask". Plaintiffs were threatened with the cancellation of her hearing for not

21  having the ability to wear a mask. Based on the blatant disregard of Plaintiff's

22  rights to an in person hearing, and the fact that Mrs. McKenzie filed a written

23  complaint against "Mr. Silva's" fraudulent business practices. It is safe to

24  assume that "Mr. Garcia" and "Mr. Yasutomi" were unlawfully acting on "Mr.

25  Silva's" behalf solely for the purposes of discrimination and retaliation. Both

26  "Mr. Garcia" and "Mr. Yasutomi" emphasized the fact that "Mr. Silva" was

27

28

**VERIFIED COMPLAINT FOR DAMAGES**

giving them the directives to deny Mr. and Mrs. McKenzie entry to her hearing.

19. Plaintiffs also inquired with "Mr. Garcia" and "Mr. Yasutomi" whether the Social Security Administration were following the "recommendations" of the "Center for Disease Control and Prevention" (Herein after "CDC"), which states, "CDC *recommends* that people wear masks in public settings and when around people who don't live in your household, especially when other social distancing measures are difficult to maintain". Further Plaintiffs asked "Mr. Garcia" and "Mr. Yasutomi" if they were aware of the exemption verbiage contained within the "CDC Guidelines". "Mr. Garcia" and "Mr. Yasutomi" emphasized that regardless of the "CDC Guidelines", they are being directed by "Mr. Silva" to deny Plaintiffs entry without a mask.

## CENTER FOR DISEASE CONTROL and PREVENTION CONSIDERATIONS

The "Health and Human Agency, California Department of Public Health" revised its guidelines to include exemptions for mask and face coverings and states the following persons are exempt:
Persons with a medical condition, mental health condition, or disability that prevents wearing a face covering.

This includes persons with a medical condition for whom wearing a face covering could obstruct breathing or who are unconscious, incapacitated, or otherwise unable to remove a face covering without assistance. Furthermore, according to covid19.ca.gov individuals who should not wear a mask includes:

1. Children under 2 years old.
2. Anyone with respiratory issues where it would impede their breathing.
3. Anyone unable to remove the mask without help.
4. Anyone with a medical condition, mental health condition, or disability that does not allow them to wear a mask.

20. In addition, Mr. McKenzie's expertise in forensics centralized in the area of "[1] Auricular Anthropometry" has proven that the alleged President of the

---

[1] Federal agencies like the F.B.I. and the I.N.S. use biometrics daily to identify the individuals they investigate. Fingerprints are the most common form they use, however due to advances in technology there are a full range of different identifying features that have been uncovered, which everyone has and are unique to themselves. The I.N.S. in particular, utilizes the ear as a useful tool to identify individuals.

The reason why they use this body part, is because they can identify individuals from a distance without the individuals consent to do so. When you study the human ear, you'll notice the ear does not change until you hit the age of around 60. At that point the cartilage will breakdown and you will see signs of aging. There are external factors that also must be taken into consideration especially when you are looking at twins. The health of the individual will cause the skin

**VERIFIED COMPLAINT FOR DAMAGES**

United States known as "Joe Biden" has been positively identified as the deceased Hollywood actor/persona known as "David Carradine" thus making his alleged "Executive Order" for wearing a mask and face coverings fraudulent, treasonous, null and void.

21. On May 31, 2022, the person known as "Mr. Yasutomi" sent Mrs. McKenzie a correspondence indicating that her hearing scheduled for May 25, 2022 at 9:15 am was postponed because of Plaintiff's alleged *refusal* to wear a mask. "Mr. Yasutomi" further indicated that the Social Security Administration requires anyone aged two or older entering the agency's offices to wear a face mask compliant with Centers for Disease Control and Prevention (Herein after "CDC"). "Mr. Yasutomi's" inattentive correspondence to Mrs. McKenzie failed to include the exemptions specified on CDC's website, which include medical conditions/disabilities.

22. "Mr. Yasutomi's" correspondence clearly states that visitor procedures notice informs claimants that they "must wear a face mask throughout their visit". Additionally, "Mr. Yasutomi" indicated that because of Plaintiffs alleged refusal to wear a face mask that he finds that it is necessary to require her to appear by telephone, because of extraordinary circumstances, which also prevents her from appearing by traditional video teleconference or in person. Pursuant to **Code of Federal Regulations 404.936(c) (2)** states: **(c)** "Determining manner of hearing to schedule. We will generally schedule you or any other party to the hearing to appear either by video teleconferencing or

---

texture to differ, which is why even with twins you will not find the same ear. THEY WILL SHOW THE SAME TRAITS but there will be other physical aspects of that ear that will change over time.

To learn more about these technologies you can always visit www.ieee.org to see the thousands upon thousands of peer reviewed papers that have been written over the past decade on different technologies which include EAR BIOMETRICS, which is what Plaintiff uses in his investigations. The Biometrics used, essentially map out the ear via 2D photographs, and the 9 landmarks that exist in that ear that are unchanging throughout your life. If/When the data is available, a combination of tests are used that include handwriting analysis, vein pattern on the back of the hand, teeth, palm, and of course facial landmarks.

- 14 -

**VERIFIED COMPLAINT FOR DAMAGES**

in person.  Subject to paragraph **(c) (3)** which states: If you are incarcerated and video teleconferencing is not available, we will schedule your appearance by telephone, unless we find that there are facts in your particular case that provide a good reason to schedule your appearance in person, if allowed by the place of confinement, or by video teleconferencing or in person upon your release". Furthermore, **Code of Federal Regulations 404.936 (a)** states: "We set the time and place for any hearing. We may change the time and place if it is necessary. After sending you reasonable notice of the proposed action, the Administrative Law Judge may adjourn, or postpone the hearing or reopen it to receive additional evidence anytime before he or she notifies you of a hearing decision".

23. Mr. Yasutomi's correspondence to Mrs. McKenzie where he sites Code of Federal Regulations as indicated above clearly does not apply to Plaintiffs and their circumstances. Based upon the facts Mr. Yasutomi's postponement and denial of services was solely for purposes of discrimination, harassment, and retaliation. Plaintiffs are not incarcerated and according to the CDC and the alleged "Executive Order" good cause did not exist for postponement. The Social Security Administration's "Mask Requirement" policy is baseless, nonsensical, & without standing.

24. Moreover, Plaintiffs trusted that management would recognize their intentional violations of the "ADA" Title II, 42 U.S.C. §12132, which applies to the public sector and states essentially that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. The ADA defines "public entity" in pertinent part as "any State or local government" or "any department, agency, special purpose district, or other instrumentality of a State or States or local government." **42 U.S.C. § 12131(a) (A)-(B).** The Social Security

**VERIFIED COMPLAINT FOR DAMAGES**

Administration is a public entity and local government agency. **Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181, et seq.,** prohibits discrimination against individuals "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Plaintiffs hoped that the aforementioned individuals would acknowledge their blatant disregard of the verbiage contained within the alleged "state mandate" and CDC website which both make reference to persons who are exempt from wearing a mask.

25. According to the Social Security's Administration website, it claims that "Social Security Administration is committed to ensuring that everyone has the opportunity to access its programs, activities, and facilities, regardless of disability, in accordance with Section 504 of the Rehabilitation Act of 1973 and Section 504's relevant implementing regulations, 45 C.F.R. Part 85 (Part 85). Section 504 prohibits Federal agencies and programs that receive Federal funding from discriminating against qualified individuals with disabilities. Part 85 specifies the actions it must take to ensure Social Security Administration do not discriminate against individuals with disabilities".

26. The above statement evinces that the Social Security Administration accommodates individuals with disabilities, but refused to accommodate Mr. and Mrs. McKenzie due to their disability for the purposes of discrimination, harassment, and retaliation. The refusal of service based upon an alleged "executive order" that explicitly references those who are exempt.

## **FIRST CAUSE OF ACTION**

(Title II of the Americans with Disabilities Act 42 U.S.C. § 12132)

27. Plaintiffs incorporate the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

- 16 -

**VERIFIED COMPLAINT FOR DAMAGES**

28. As previously indicated Plaintiffs were diagnosed with severe intractable Post Traumatic Stress Syndrome ("PTSD") that prevents them from wearing a mask, because it obstructs their breathing and creates further severe anxiety that worsens their disability. Additionally, Title II, 42 U.S.C. § 12132, applies to the public sector and states essentially that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the  services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

29. Plaintiffs are qualified individuals with a disability as defined in 42 U.S.C. § 12102(2), and was recklessly excluded and denied from participation of Mrs. McKenzie's Disability Determination Hearing on several occasions as previously mentioned in the complaint; such exclusion and discrimination was by reason of Plaintiff's inability to wear a mask because of their disability, which prevents them from doing so. Lovell v. Chandler, 303 F.3d 1039, 1052 (9 Cir. 2002).

30. Additionally, a public entity may be sued for negligence if a law imposes a particular duty upon a government entity or agency, and that entity or agency fails to fulfill that legal duty, the government can be held liable for injuries caused as a result under the California Tort Claims Act.The entity responsible in a **California Tort Claims Act** claim is generally the government entity or agency responsible for the employee, property, or carrying out a duty. The **CTCA** applies to state, county, and local government agencies and departments, including city or municipality agencies. A government entity or agency is responsible for any **negligent acts** committed by its employees, if: the employee was acting within the scope of their employment; or the employee was carrying out some government function.

31. As previously indicated herein in the complaint the law imposes a duty to the Social Security Administration and its employees acting on its behalf to

**VERIFIED COMPLAINT FOR DAMAGES**

provide "ADA" accommodations. Defendant employees known as "Troy Silva"; "Mark Yasutomi"; along with its Security Contractor "F. Garcia" were all acting within the scope of their employment on behalf of the Social Security Administration and intentionally failed to fulfill its legal duty. The legal duty that Defendant and its employees failed to fulfill were to properly accommodate Plaintiff's "ADA" as to their disability in alignment with "CDC Guidelines" and the alleged "Executive Order" exemptions from mask wearing.

32. As a result of said negligence Plaintiffs were maliciously denied full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation by Defendant without due process and in reckless violation of the provisions of the ADA; because of their disability preventing them from wearing a mask to enter the Social Security Administration Hearing Suite as claimed in their policies.

33. Plaintiffs attempted to receive services from the Social Security Administration and are individuals with a disability under the "ADA".

34. Despite being placed on notice that Plaintiffs are exempt from wearing a mask based upon their medical condition/disability, Defendant refused services to Plaintiffs and physically prevented them from entering the Social Security Administration Hearing Suite; despite Defendant accommodating other customers with medical conditions and disabilities – as it states on its website. This despicable conduct constitutes intentional discrimination.

35. Defendant's actions were and are in violation of the "ADA" and as a result of its omissions Plaintiffs are entitled to damages.  A Plaintiff may only need to establish that a public agency had knowledge that individuals with disabilities were being denied equal access/use of a public service or program. This bar of "deliberate indifference" means that a party need not show actual knowledge of

**VERIFIED COMPLAINT FOR DAMAGES**

the alleged discriminatory acts in order to recover money damages. Rather, the party merely needs to show that the public agency had "some form of notice . . . and the opportunity to conform to statutory dictates. . . "City of Canton v. Harris 489 U.S. 378, 389 (1988). As previously indicated herein Plaintiffs repeatedly put the Social Security Administration on notice of the "ADA" violations and their need to be accommodated, but to no avail.

36. Defendant's actions were and are in violation of the "ADA" and as a result of its omissions Plaintiffs suffered  severe emotional distress, severe anxiety, mental anguish, inconvenience, further loss of enjoyment of life, which entitles them to damages.

37. To recover money damages under Title II of the ADA, a Plaintiff must prove intentional discrimination on the part of the defendant under a "deliberate indifference" standard. Duvall v. Cty. of Kitsap, supra, 260 F.3d at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood." Id. at 1139. Throughout the Complaint Plaintiffs show deliberate indifference of the Social Security Administration being put on notice as to an ADA accommodation, and failed to act upon said accommodation. As a result Plaintiffs suffered and continue to suffer severe anxiety, severe emotion distress, mental anguish, and enjoyment of life.

WHEREFORE, Plaintiff's demands relief as set forth below.

## SECOND CAUSE OF ACTION

(Title III of the Americans with Disabilities Act 42 U.S.C. § 12181)

38. Plaintiffs incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

39. Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181 , et seq., prohibits discrimination against individuals "on the basis of disability

**VERIFIED COMPLAINT FOR DAMAGES**

1  in the full and equal enjoyment of the goods, services, facilities, privileges,

2  advantages, or accommodations of any place of public accommodation by any

3  person who owns, leases (or leases to), or operates a place of public

4  accommodation." 42 U.S.C. § 12182(a). Defendant employees known as "Silva",

5  "Yasutomi", along with its contractor "Garcia" violated the rights of Plaintiffs

6  because of their disability to full and equal enjoyment of the goods, services,

7  facilities, privileges, advantages, and accommodations by denying full

8  and equal access to Social Security Administration Hearing Suite.

9  40. The Social Security Administration Hearing Suite constitutes a "public place"

10  where the general public is invited subject only to the conditions and limitations

11  established by law, or state or federal regulations, and applicable alike to all

12  persons. Yet, Defendants failed to accommodate Plaintiff's disability.

13  The actions of Defendant were and are in violation of 42 U.S.C. § 12181, et seq.

14  Discrimination includes a failure to make reasonable modifications … unless

15  the entity can demonstrate that making such modifications would

16  fundamentally alter the nature of such … facilities…or accommodations.

17  42 U.S.C. § 12181 (b)(2)(A)(ii). Plaintiffs demanded a reasonable accom-

18  modation in accordance with "CDC Guidelines" and the alleged "Executive

19  Order" as to their exemption from wearing a mask. Defendants were made

20  aware of Plaintiffs exemption status prior to Mrs. McKenzie hearing. Plaintiffs

21  were exercising their right to appear in person and to be reasonably accom-

22  modated. Because of Plaintiffs disability being directly related to mis-

23  representation that traumatized them. Alternative, methods as far as by phone

24  and via video conference were impossible for Plaintiffs to accept on the basis

25  of the uniqueness of their disability, which makes it difficult for them to com-

26  prehend when conducting business by phone or via video conference.

27  41. Additionally, discrimination also includes a failure to remove architectural

28

- 20 -

**VERIFIED COMPLAINT FOR DAMAGES**

barriers in existing facilities where such removal is readily achievable, or where removal of a barrier is not readily achievable, a failure to make such facilities… or accommodations available through alternative methods, if such methods are readily achievable. One can agree that it was certainly achievable for the Social Security Administration to provide alternative methods in accordance with "CDC Guidelines" such as: social distancing, or utilizing a plexi glass during Mrs. McKenzie's hearing, but it refused to do so, because the aforementioned employees and the Social Security Administration's goal was solely for the purposes to discriminate, harass, and retaliate against Plaintiffs for filing a complaint against "Mr. Silva". (42 U.S.C.§ 12181 (b)(2)(A)(iv) and 42 U.S.C. § 12181 (b)(2)(A)(v)).

42. Furthermore, a facility or part of a facility that has been altered by an establishment in a manner that affects or could affect the usability of the facility, discrimination includes, "a failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities. A "place of public accommodation" is a facility operated by a private entity, whose operations affect commerce; (6) or other service establishment". Under California Law the Social Security Administration must accommodate individuals with medical conditions and disabilities full and equal access to its services, which prohibit discrimination against people who have medical conditions and disabilities.

43. Defendant contends that it may lawfully deny people with medical conditions and disabilities full and equal access to the Social Security Administration Buildings and Hearing Suites. Defendant's actions were and are in violation of the "ADA" and as a result of its omissions Plaintiffs suffered  severe emotional distress, severe anxiety, mental anguish, inconvenience, further loss of

**VERIFIED COMPLAINT FOR DAMAGES**

enjoyment of life, which entitles them to damages.

## **THIRD CAUSE OF ACTION**

(Retaliation Claim under Title IV)

44. Plaintiffs incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

45. On March 28, 2022, Plaintiff filed a complaint with Office of Hearing Operations Unfair Treatment against the person known as "Mr. Silva" for refusing to send her official correspondences and indicating to him that the law does not allow her to comply with such. The complaint was acknowledged by Executive Human Resources and was presumably addressed with "Mr. Silva. Because of Plaintiff's involvement in a protective activity "Mr. Silva", "Mr. Yastomi", and "Mr. Garcia" subjected Plaintiffs to an adverse action by denying them their right to attend Mrs. McKenzie's Disability Determination Hearing, and refused to accommodate them for having the inability to wear a mask because of such disability.

46. As previously mentioned in the complaint because Plaintiffs demanded an "ADA" accommodation for having the inability to wear a mask because of their disability. The persons known as "Mr. Silva", "Mr. Yasutomi, and "Mr. Garcia" retaliated against Plaintiffs by unlawfully denying them entry into the Social Security Hearing Suite. As previously indicated, Plaintiffs also filed several protected complaints prior to Mrs. McKenzie's hearing, but to no avail.

47. Defendants engaged in wrongful despicable conduct through unlawful means. The persons known as "Mr. Garcia" and "Mr. Yasutomi" indicated that they were following the alleged "Executive Order"; which refers to "CDC Guidelines". Defendants failed to honor medical exemptions; and denied Plaintiffs their lawful right to attend Mrs. McKenzie's benefits determination hearing in person without a legal basis.

**VERIFIED COMPLAINT FOR DAMAGES**

48. Title 42 U.S.C. § 12203(a) provides that no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by the chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the chapter. Section 12203(b) provides that it shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed any right granted or protected by the chapter, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of any right granted or protected by the chapter. Section 12203(c) states that the remedies and procedures available under sections 12117, 12133, and 121887 of the title shall be available to aggrieved persons for violations of subsections (a) and (b) of the section with respect to subchapter I, subchapter II, and subchapter II of the chapter, respectively (citing Brown v. City of Tucson, 336 F.3d 1181, 1186-87 (9 Cir. 2003) (outlining the elements of a prima facie case of ADA retaliation under a burden shifting analysis)). Pursuing one's rights under the ADA constitutes protected activity. Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 850 (9 Cir. 2004). In the context of the employment cases, an adverse action is any action reasonably likely to deter employees from engaging in protected activity. Pardi v. Kaiser Foundation Hospitals, 389 F.3d at 850. Requesting a reasonable accommodation is a protected activity.
See, Head v. Glacier Northwest Inc., 413 F.3d 1053, 1066 (9 Cir. 2005). It has been held that complaining in good faith of disparate treatment, failure to accommodate a Plaintiff's disability or of retaliatory conduct that could constitute discrimination under the ADA is a protected activity, because the statute prohibits discrimination due to an individual's opposition to any conduct or practice made unlawful, or due to one's having made a charge. Angelone v.

**VERIFIED COMPLAINT FOR DAMAGES**

1   <u>Seyfarth Shaw, LLP</u>, 2007 WL  1033458, *12 (E.D.Cal. April 3, 2007).

2   49. A close temporal connection between the protected activity and the adverse

3       action "can indeed support an inference of causation." Woodruff, 287 F.3d at

4       529, because the continuing series of back and forth protected activities and

5       adverse actions over a period of time is sufficient to allege a retaliation claim.

6       Weixel, 287 F.3d at 149. As a result of said omissions Plaintiffs were harmed

7       and Defendants wrongful despicable conduct was a substantial factor in causing

8       Plaintiff's harm. Plaintiffs have suffered and continue to suffer from severe

9       emotional distress, severe anxiety, severe mental anguish.

10      Defendant's negligent & despicable conduct was malicious, oppressive, and

11      fraudulent warranting punitive damages.

12   **RELIEF DEMANDED**

13   50. Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132

14   51. Compensatory pain & suffering damages for violation of Title III of the

15      Americans with Disability Act (the "ADA"), 42 U.S.C. § 12181 in the amount

16      of  $200,000.00 or to be determined at proof of trial;

17   52. Compensatory damages in the amount of $250,000.00 or to be determined by

18      proof at trial.

19   53. Punitive Damages in the amount of $200,000.00 to be determined by proof at

20      trial.

21   54. Plaintiff's reasonable fees, expenses, and costs of suit as provided for by law,

22      in the amount of $10,000.00 or an amount to be determined by proof at trial;

23   55. Such other and further relief as the Court deems just and proper.

24   I declare under penalty of perjury under the laws of the United States of America and

25   State of California that the forgoing is true and correct.

26

27

28

**VERIFIED COMPLAINT FOR DAMAGES**

1

Date: November 16, 2023                    Respectfully submitted,

2

3          By: _____

4                    Adamina McKenzie
                     In Pro Per

5          By: _____

6                    Elliott McKenzie
                     In Pro Per

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFIED COMPLAINT FOR DAMAGES**

1

## VERIFIED COMPLAINT

2     I, Adamina McKenzie and Elliott McKenzie; are citizens of the United States

3 and a resident of California hereby declares under penalty of perjury pursuant to

4 28 U.S.C §1746 that the foregoing is true and correct to the best of my knowledge.

5     Executed this 16th day of November 2023.

6

7                                          By: _____

8                                               Adamina McKenzie
                                                   In Pro Per
9

10

11                                         By: _____

12                                               Elliott McKenzie
                                                   In Pro Per
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## VERIFIED COMPLAINT FOR DAMAGES

# EXHIBIT A



# SOCIAL SECURITY
Office of the General Counsel
Office of General Law

October 4, 2022

**SENT VIA CERTIFIED MAIL—
RETURN RECEIPT REQUESTED &
FIRST CLASS MAIL**

Adamina McKenzie
700 E. Birch Street, #762
Brea, CA 92822

Re:    Administrative Tort Claim of Adamina McKenzie
       Date of Incident:     May 25, 2022
       Date Claim Filed:     June 28, 2022
       Amount of Claim:      $300,000.00

Dear Ms. McKenzie:

This office reviewed your claim, received June 28, 2022, for intentional interference with perspective economic advantage, negligent interference with perspective economic advantage, and violations of the California Unruh Act and the California Disabled Person Act. You allege that on May 25, 2022, you were "wrongfully and unlawfully" denied "access to the Social Security Hearing Suites" located at 605 N. Arrowhead Ave., San Bernardino, California "for not having the ability to wear a mask because of" a "disability/medical condition." As a result, you allege that you suffered "severe emotional distress, severe anxiety, severe mental anguish, loss of benefits and damages." You request $300,000.00 in damages.

The United States incurs liability under the Federal Tort Claims Act when the injury alleged results from a negligent act or omission on the part of an employee of the United States acting within the scope of his or her employment. In this case, you have provided no evidence and we find no evidence that a negligent act or omission of a federal employee acting within the scope of his or her employment resulted in your injury. Accordingly, we deny your claim.

You may appeal this determination by filing suit in the appropriate United States District Court within six (6) months of the date of this letter.

Sincerely,

/s/ Russell Cohen
Russell Cohen
Supervisory Attorney
Office of General Law, Division 1

6401 SECURITY BLVD., ALTMEYER, ROOM 617, BALTIMORE, MD 21235

# EXHIBIT B



# SOCIAL SECURITY
Office of the General Counsel
Office of General Law

May 9, 2023

**SENT VIA CERTIFIED MAIL—**
**RETURN RECEIPT REQUESTED &**
**FIRST CLASS MAIL**

Elliott McKenzie
700 E. Birch Street, #762
Brea, CA 92822

   Re:  Administrative Tort Claim of Elliott McKenzie
       Date of Incident:  October 5, 2022
       Date Claim Filed: February 9, 2023
       Amount of Claim: $300,000.00

Dear Mr. McKenzie:

This office reviewed your claim, received February 9, 2023, for negligence, professional negligence, negligent infliction of emotional distress (NIED), and violations of the California Unruh Act and the California Disabled Person Act. You allege that on October 5, 2022, you were "refused service and denied an ADA accommodation for not having the ability to wear a mask due to [your] medical condition/disability in violation of the law and 'CDC' guidelines and 'Executive Order'" at the Social Security office located at 605 N. Arrowhead Ave., San Bernadino, California. You request $300,000.00 in damages.

The United States incurs liability under the Federal Tort Claims Act when the injury alleged results from a negligent act or omission on the part of an employee of the United States acting within the scope of his or her employment. In this case, you have provided no evidence and we find no evidence that a negligent act or omission of a federal employee acting within the scope of his or her employment resulted in your injury. Accordingly, we deny your claim.

You may appeal this determination by filing suit in the appropriate United States District Court within six (6) months of the date of this letter.

       Sincerely,

       /s/ Russell Cohen
       Russell Cohen
       Supervisory Attorney
       Office of General Law, Division 1



Track Packages Anytime, Anywhere

Get the free Informed Delivery® feature to receive automated notifications on your packages

Learn More

Tracking Number:

**70172620000091683961**

Copy    Add to Informed Delivery

Remove ✕

**Latest Update**

Your item was picked up at the post office at 10:28 am on May 17, 2023 in BREA, CA 92822.

**Get More Out of USPS Tracking:**
USPS Tracking Plus®

✅ **Delivered**
Delivered, Individual Picked Up at Post Office
BREA, CA 92822
May 17, 2023, 10:28 am

See All Tracking History

**What Do USPS Tracking Statuses Mean?**

**Text & Email Updates**    ⌄

**USPS Tracking Plus®**    ⌄

Product Information